UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATALIE YARGEAU,

      Plaintiff                      Civil Action No. 14-14165

v.                             HON. STEPHEN J. MURPHY, III
                                   U.S. District Judge
                                   HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL       U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Natalie Yargeau ("Plaintiff") brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying her application for Supplemental Security Income and Disability Insurance Benefits under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's motion for summary judgment be GRANTED and that Plaintiff's motion be DENIED.

## PROCEDURAL HISTORY

On October 13, 2011, Plaintiff filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), alleging disability as of September 19,

2011 (Tr. 174-179, 180-186).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on April 11, 2013 before Administrative Law Judge ("ALJ") Lawrence E. Blatnik (Tr. 40).  Plaintiff, represented by attorney Karl Bender testified (Tr. 44-68), as did Vocational Expert ("VE") Georgette Gunther (Tr. 68-77).  On June 21, 2013, ALJ Blatnik found that Plaintiff was capable of performing her past relevant work as a data entry clerk (Tr. 32-33).  On September 9, 2014, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on October 29, 2014.

## BACKGROUND FACTS

Plaintiff, born March 22, 1960, was 53 when ALJ Blatnik issued his decision (Tr. 33, 174).  She completed one year of college and worked previously as a bookkeeper, legal assistant, cafeteria worker, and medical biller (Tr. 213).  She alleges disability as a result of migraine headaches, seizures, depression, anxiety, arthritis, degenerative disc disease, osteoporosis, and substance abuse (Tr. 212).

### A.    Plaintiff's Testimony

Plaintiff offered the following testimony:

 She stood 5'3" and weighed 112 pounds (Tr. 45).  She lived with her parents in Owosso, Michigan (Tr. 45).  She held a valid driver's license and drove about once a week (Tr. 46).  In 2011, she received an OUI conviction (Tr. 46).  She worked full time as a data entry clerk until June, 2011 (Tr. 47).   Her attempts to work after June, 2011 were stymied by migraine headaches and stress (Tr. 47-48).  Between 1997 and 2001, she worked in

-2-

accounts payable at an automotive plant (Tr. 48). After the accounts payable job, she worked for a law firm for approximately one year but was forced to quit due to health problems (Tr. 49).

Plaintiff was unable to work due to migraine headaches and back pain (Tr. 50). She experienced migraine headaches about once a week lasting for up to three days (Tr. 50). Her migraine medication was effective only part of the time (Tr. 51). She performed exercises recommended by a physical therapist, but continued to experience constant, non-radiating low back pain (Tr. 51-52). She had not experienced seizures since November, 2011 (Tr. 54).

Plaintiff was unable to walk for more than 30 minutes, stand for 15, or sit for 60 at one time (Tr. 55). She experienced difficulty bending, but was able to squat and climb stairs (Tr. 55). She experienced occasional hand numbness but no other manipulative limitations (Tr. 55-56). She smoked around 10 cigarettes each day (Tr. 56). She had not used alcohol since June, 2012 (Tr. 56-58, 63). She had been admitted for inpatient treatment for alcohol abuse for 52 days in 2012 and currently attended AA meetings twice a week (Tr. 57-58). She was able to take care of her personal needs and perform light household chores (Tr. 58). During long car trips, she required stops for position changes around once an hour (Tr. 60). Plaintiff was unable to work due to unpredictable back problems or headaches (Tr. 62). Her backaches were worse in cold, damp weather (Tr. 62). Lumbar spine epidural injections did not improve her condition (Tr. 62-63).

In response to questioning by her attorney, Plaintiff testified that she moved in with

her parents in August, 2012 after she lost her house (Tr. 63). Her back pain became worse after giving up alcohol (Tr. 64). She experienced sensitivity to "light and sound" (Tr. 64). On a scale of one to ten, she typically experienced level "two to three" but up to level "nine" back pain on a "bad" day (Tr. 64-65). On such days, she spent most of the time in bed with pillows under her knees (Tr. 65). She had sought emergency treatment on several occasions for migraines (Tr. 65). She also took medication for depression and anxiety (Tr. 66). She visited her children and grandchildren approximately twice a month (Tr. 67).

### B. Medical Evidence

### 1. Treating Sources[1]

In January, 2011, Plaintiff sought emergency treatment after reporting a seizure (Tr. 379). She was assessed with a "syncopal episode with possible seizure" (Tr. 380). Treating staff found that the seizure was "provoked" by the use of Wellbutrin (Tr. 386). She was prescribed a substitute medication (Tr. 386). In June, 2011, Plaintiff sought treatment for migraine headaches (Tr. 399). She was prescribed Motrin 800 upon discharge (Tr. 400). The same month, she sought emergency treatment for seizures (Tr. 265). Treating staff noted a history of alcohol and "possibly drug abuse" (Tr. 265). A CT of the brain was unremarkable (Tr. 267). A clinical examination performed in response to Plaintiff's report of migraine headaches was unremarkable (Tr. 491, 494). Umesh Verma, M.D. stated that Plaintiff should

---

[1]Records created in the year prior to the September 19, 2011 alleged onset of disability are included for background purposes only.

-4-

be "wean[ed]" off pain medication (Tr. 491).   July, 2011 emergency records note a history of "drug seeking behaviors" (Tr. 411-412).  The same month, Plaintiff sought treatment for chest pain (Tr. 367).  A stress test and other studies were negative for abnormalities (Tr. 429, 462-464).  Plaintiff reported drinking one half to one pint of vodka daily but denied the use of street drugs (Tr. 367).  She reported chronic back pain (Tr. 368).  She was diagnosed as a "chronic alcoholic" (Tr. 433).  An MRI of the brain was negative for abnormalities (Tr. 440).

In August, 2011, Plaintiff received emergency treatment for back pain (Tr. 401). Nerve conduction studies of the lower extremities were normal (Tr. 496).  The same month, she was charged with driving under the influence (Tr. 853).  Dr. Verma's September, 2011 notes state that Plaintiff passed out in a bathroom (Tr. 497).  An EMG was unremarkable (Tr. 498).  She was advised to "quit narcotics" (Tr. 498).  The same month, Gary Mikesell, D.O. noted Plaintiff's report that she injured her back while performing yard work (Tr. 507).  In October, 2011, Plaintiff sought treatment for "depression, anxiety, and feelings of decreased self-worth" (Tr. 483).  Plaintiff reported suicidal ideation (Tr. 484).  She was admitted for inpatient psychiatric treatment for seven days (Tr. 485).  Upon discharge, she was diagnosed with major depression, alcohol dependence, and "possible bipolar affective disorder" (Tr. 485).  Upon discharge, Plaintiff was advised to "stay sober, go to AA and NA and get a sponsor" (Tr. 486).  She was assigned a GAF of 40 to 45[2] (Tr. 485).  The following week,

---

[2]

A GAF score of 31 to 40 indicates "some impairment in reality testing or

treating records by Dr. Mikesell state that Plaintiff was attempting to receive disability benefits but was "prepared to go back to work if it doesn't happen" (Tr. 505). The same month, imaging studies of the left hip were unremarkable but showed "marked disc space narrowing" at L4-L5 (Tr. 482). The following month, Plaintiff reported ongoing migraine headaches (Tr. 501). University of Michigan hospital records state that inpatient psychiatric treatment was not warranted (Tr. 613). Examination notes by Joshua D. Bess, M.D. state that it was "very difficult to differentiate" if Plaintiff's reported psychiatric and seizure-related symptoms were "conversion, factitious or malingering" (Tr. 613). She was assigned a GAF of 55[3] (Tr. 613). In December, 2011, Plaintiff was admitted for opiate and alcohol dependence treatment for 14 days (Tr. 842).

In January, 2012, Plaintiff was readmitted for substance abuse treatment (Tr. 854-855). April, 2012 treating notes state that Plaintiff relapsed after being discharged from a detox program (Tr. 680, 691). The following month, Plaintiff reported back pain after taking a fall (Tr. 756). Plaintiff reported that she was "[worn] out taking care of elderly parents" (Tr. 796). In June, 2012 Plaintiff sought treatment for ongoing symptoms of back pain and

---

communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders–Text Revision* ("*DSM–IV–TR*"), 34. A GAF score of 41-50 indicates '[s]erious symptoms...[or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job. *Id.* at 34.

[3]

A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *DSM-IV-TR*, at 34.

depression (Tr. 752).  The same month, Plaintiff, intoxicated, sought emergency treatment for alcohol abuse (Tr. 776).  She exhibited adequate strength in all extremities with a full range of motion (Tr. 777).  A physical therapy evaluation states that Plaintiff was unable to sit for more than 60 minutes at a time (Tr. 934).  In August, 2012, Plaintiff sought emergency treatment for migraine headaches (Tr. 863).  Emergency notes state "drug seeking behavior suspected" (Tr. 867).  She was denied a request for narcotics (Tr. 869).

In October, 2012, Wael Salman, M.D. examined Plaintiff, noting chronic moderate to severe low back pain (Tr. 262).  Plaintiff reported that Norco kept the back pain under "fair" control and that anxiety and depression were "well controlled" with current medication (Tr. 262).  She reported headaches "every few weeks" (Tr. 262).  Plaintiff reported that she had recently begun caring for her elderly parents (Tr. 262).  Dr. Salman observed a normal gait (Tr. 263).  In January, 2013, Plaintiff sought treatment for migraine-induced nausea (Tr. 899).  She was advised to take Motrin and Norco for pain (Tr. 902).

In March, 2013, neurologist Allan Clague, M.D. examined Plaintiff, noting her report of lower back pain and the inability to stand or walk for more than 20 minutes (Tr. 1323).  Plaintiff also reported that pain interfered with her ability to concentrate (Tr. 1323-1324).  Dr. Clague observed good strength in the lower extremities (Tr. 1324).  He found that she was unable to lift more than 10 pounds or push, pull, bend, twist, crawl, climb, or squat (Tr. 1325).  He opined that Plaintiff was "totally and permanently medically disabled . . ."  He noted that the physical limitations were exacerbated by anxiety and depression (Tr. 1325).

-7-

Treating records from the following month state that Plaintiff experienced weekly migraine headaches, then later, "daily" migraine headaches (Tr. 1328, 1330).

### 2. Non-Treating Sources

In February, 2012, Douglas Chang, M.D. performed a non-examining review of Plaintiff's medical records, finding that she could perform a limited range of exertionally light work[4] (Tr. 94).   He found that her allegations of disability were "partially" credible (Tr. 91).  Darrell Snyder, Ph.D. found mild limitation in activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace (Tr. 92-93).  He found that Plaintiff did not experience significant limitations in carrying out detailed instructions (Tr. 96).

### C. Vocational Expert Testimony

VE Georgette Gunter classified Plaintiff's former work as a legal assistant as sedentary and skilled and work as a data entry clerk as sedentary and semiskilled (Tr. 70). The ALJ then posed the following question to the VE, describing an individual of Plaintiff's age, education, and work background:

[A]ssume we have an individual that cannot lift or carry more than 20 pounds

---

[4]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

occasionally and 10 pounds frequently. Let's assume for right now the individual can sit, stand or walk, all for at least six hours in an eight hour workday. Would be restricted to no climbing of ladders, ropes or scaffolds, only occasional climbing of ramps or stairs, as well as only occasional stooping, kneeling, crouching, crawling or squatting. She could do frequent balancing. No work that involves exposure to dangerous unprotected machinery, work at unprotected heights. No use of air powered, torque, pneumatic or vibratory tools. In addition she'd be able to understand, remember and carry out short, simple to moderately complex instructions. Also limited to routine work that does not involve frequent significant changes or adaptions. Work that does not involve meeting production quotas or goals or keeping pace with co-workers. Could an individual with those restrictions do any of the claimant's past work? (Tr. 70-71).

The VE found the above restrictions would not preclude Plaintiff's past relevant work as a data entry clerk, or the light, unskilled work of an interviewer (2,385 jobs in the regional economy); mail clerk (1,505); or, the light, semi-skilled jobs of mail sorter (1,255); or file clerk (4,665) (Tr. 71-72).

The VE testified that if the above-described hypothetical individual were limited to sedentary, rather than light work, the job of data entry clerk would still be available, along with the semiskilled work of interviewer (2,400) and file clerk (1,175); and, the unskilled work of information clerk (2,470) and ticket checker (1,780) (Tr. 72).

The VE testified further that if the individual were additionally limited by the need to change positions every 30 to 45 minutes (sit/stand option), the numbers for the sedentary, semiskilled interviewer position would be reduced to 1,250 but the light unskilled interviewer positions would be unchanged (Tr. 73). She stated that the data entry, file clerk, mail clerk, and mail sorter positions would be eliminated (Tr. 73).

The VE stated that if the same individual required "frequent, unscheduled rest breaks," or, were required to miss work more than one day a month, all work would be eliminated (Tr. 74). The VE stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") except for her findings regarding a sit/stand option which were drawn from Employment Statistics Quarterly (Tr. 74-75).

### D.    The ALJ's Decision

Citing Plaintiff's medical records and testimony, the ALJ found that Plaintiff experienced the severe impairments of "[d]egenerative disc disease of the lumbar spine; migraine headaches; depression; and a history of alcohol abuse, in current remission" but that none of the conditions met or medically equaled the impairments found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 25). As to the mental impairments, the ALJ found that Plaintiff experienced mild limitation in activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace (Tr. 25-26). The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for light work with the following additional restrictions:

> She is limited to never climbing ladders, ropes, or scaffolds; can occasionally kneel, stoop, crouch, crawl, squat, or climb ramps or stairs; and can frequently balance. She can never use air, pneumatic, dangerous or unprotected machinery or work at unprotected heights. In addition, she is able to understand, remember, and carry out short and simple to moderately complex instructions; perform routine work that does not require frequent significant changes or adaptations; and perform work that does not involve meeting production quotas or goals or keeping pace with co-workers

(Tr. 27). Citing the VE's final job findings, the ALJ determined that Plaintiff could perform

her past relevant semiskilled work as a data entry clerk "as actually and generally performed" (Tr. 32).  The ALJ found further that Plaintiff could perform the semiskilled, light positions of mail sorter and file clerk and unskilled, light positions of interviewer and mail clerk (Tr. 33).

The ALJ discounted Plaintiff's allegations of disability, noting that she could perform household and cooking chores; take care her parents and pets; and "driving[] and socializing daily" (Tr. 30).  He observed that Plaintiff went out independently and did not experience problems getting along with family, friends, or authority figures (Tr. 30).  He noted that the conservative treatment prescribed by Plaintiff's treating sources was "relatively effective" in controlling symptoms of headaches and back pain (Tr. 30).  He discounted Dr. Clagues's March, 2013 opinion, noting that it was based on Plaintiff's "subjective report" of limitations (Tr. 30, 32).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.   It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*,  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.    The Treating Sources

Plaintiff argues first that the ALJ erred by failing to mention or evaluate the opinion of Dr. Gary Mikesell, a treating source.  *Plaintiff's Brief,* 10, *Docket #14* (*citing* Tr. 503-513).  She also faults the ALJ for according only "minimal weight" to Dr. Clague's March, 2013 opinion.

### 1. Applicable Law

"If the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight."  *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir.2009)(internal quotation marks omitted)(citing *Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir.2004); 20 C.F.R. § 404.1527(c)(2)).  However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2)). In explaining the reasons for giving less than controlling weight to the treating physician opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the

"supportability of the opinion," (5) "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544.

The failure to articulate "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir.2013); *Wilson,* 378 F.3d at 544–546 (6th Cir.2004)(citing § 404.1527(c)(2)). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir.2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart*, at 376 (citing SSR 96–2p, 1996 WL 374188, *5 (1996)).

### 2. Dr. Gary Mikesell (Argument 1)

During the period under review, Dr. Mikesell noted Plaintiff's complaint that she was dizzy, nauseous, and "shakey" (June, 2011); supplied a work excuse and noted that Plaintiff's depression should be reevaluated (August, 2011); noted that Plaintiff injured her back while doing yard work (September, 2011); and noted reports of seizures, migraines, and chronic pain (October, 2011) (Tr. 504-513).

However, because Dr. Mikesell did not issue an opinion as to Plaintiff's ability to work or her functional limitations, the treating source rule does not apply. Dr. Mikesell's treating records showing that he acknowledged her reports of pain and limitation do not

-14-

qualify as an "opinion." "[R]ecords containing a physician's observations do not qualify as 'medical opinions' under the Social Security regulations and 'without more, are not the type of information from a treating physician which will be provided great weight....'" *Miller v CSS*, 2015 WL 350570 *14-15 (S.D. Ohio January 26, 2015)(*citing Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir.2007)**).**   Plaintiff's argument that the ALJ violated the "treating source rule" in declining to weigh Dr. Mikesell's "opinion" is rebutted by the absence of an opinion.[5]  Further, while Plaintiff also faults the ALJ for failing to refer to Dr. Mikesell by name, the administrative determination references his treating records by exhibit number twice (Tr. 28-29).

### 3. Dr. Clague's Opinion (Argument 2)

For contrasting reasons, the ALJ's rejection of Dr. Clague's March, 2013 opinion (Tr. 1327-1331) likewise does not provide grounds for remand.  Plaintiff contends that the opinion was rejected on the sole basis that Dr. Clague was hired by Plaintiff's attorney to perform an evaluation.  *Plaintiff's Brief* at 12-14.  However, the ALJ provided additional reasons for according only "minimal weight" to the opinion, noting that (1) Dr. Clague relied heavily on Plaintiff's subjective (but unsubstantiated) complaints, (2) it was unclear whether the "disability" finding referred to Plaintiff's inability to perform past relevant work or all substantial gainful activity as required for a disability finding under the Social Security Act,

---

[5]Plaintiff's argument is particularly specious, given that Dr. Mikesell's records contain her report that she was "prepared to go back to work if" if she were not awarded disability benefits (Tr. 505).

and, (3) Dr. Clague's disability finding was  inconsistent with Plaintiff's acknowledged ability to perform light housework, prepare meals, shop, take care of her parents, caring for herself, and handle her own finances (Tr. 30, 32).  Moreover, while Plaintiff faults the ALJ for noting Dr. Clague's limited treating history,  in fact, the ALJ properly took note of the brief treating relationship and that Dr. Clague became a treating source only shortly before the April, 2013 hearing. *See Wilson,* 378 F.3d at 544; § 404.1527(c)(2)(ALJ must consider length of the treating relationship when according less than controlling weight to a treating opinion).

### B.    Weight Accorded to the Non-Examining Source (Argument 3)

On a related note, Plaintiff argues that the ALJ erred by crediting the February, 2012 non-examining source findings over the findings of Drs. Mikesell and Clague. *Plaintiff's Brief* at 14-15.  She points out that the February, 2012 findings do not reflect Plaintiff's treatment between that month and the June, 2013 administrative decision. *Id.*

In February, 2012, Dr. Chang, a non-examining source, found that Plaintiff was capable of a range of exertionally light work (Tr. 94).  As to the psychological limitations, Darrell Snyder, Ph.D. found mild limitation in activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace but found that she did not experience significant limitations in carrying out detailed instructions (Tr. 92-93, 96).

Under the treating source rule, discussed above, "the opinions of a claimant's treating physician are generally given more weight than those of non-treating and non-examining

physicians." *Webb v Commr of Soc Sec,* No. 14-12332, 2015 WL 4756589, at *6 (E.D. Mich August 11, 2015)(Cohn, J.); 20 C.F.R. § 404.1527(c)(2). *See Gayheart , supra,* 710 F3d at 375 (6ᵗʰ Cir. 2013)("As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a . . . non-examining source").

However, because the rejection of the Dr. Clague's treating source opinion was well supported and explained, the ALJ did not err in adopting the non-examining findings.  The ALJ noted that the the non-examining findings that Plaintiff could perform a limited range of light work was consistent with her ability to care for aged parents, shop, socialize, read, dance, handle her finances and get along with others (Tr. 30).   While the non-examining opinions are not  entitled the deference accorded a treating physician, they are supported by other portions of the record and thus, constitute substantial evidence. *Atterberry v. HHS*, 871 F.2d 567, 570 (6th Cir.1989); 20 C.F.R. § 416.927(e).

Plaintiff's argument that the non-examining findings are undermined by the lack of access to the later treating records is also unavailing.  To be sure, in some instances, favoring older findings over more current ones may constitute reversible error. *See Hamblin v. Apfel*, 2001 WL 345798, *2 (6th Cir. March 26, 2001)(affirming ALJ's rejection of a treating physician's "outdated" opinion on basis  consultive physician had performed a more recent appraisal with contradicting findings). The Sixth Circuit's holding favoring the use of updated medical information is potentially more applicable when the older evidence was created by a non-treating source. *See Sayles v. Barnhart,* 2004 WL 3008739, *23 (N.D.Ill.

December 27, 2004)(adoption of "outdated and inadequate" non-treating findings created prior to a diagnosis of diabetes grounds for remand).

Here, however, the more recent clinical evidence tends to support, rather than undermine the February, 2012 findings. In April, 2012, Plaintiff reported that she was taking care of her elderly parents (Tr. 796). In June, 2012, she exhibited adequate strength in all extremities with a full range of motion (Tr. 777). October, 2012 records by Dr. Salman state that her back pain was under fair control and that anxiety and depression were well controlled (Tr. 262). Dr. Salman's records from the same month state that she experienced migraine headaches only once "every few weeks" (Tr. 262). "[T]he entry of additional medical documentation into the record, without more, does not automatically invalidate the opinions of a reviewing state agency medical expert." *Norgren v Commr of Soc Sec*, 2015 WL 5026173, *14 (E.D. Mich August 25, 2015)(Patti, M.J.)(*citing Helm v. Commissioner of Social Sec. Admin.,* 405 Fed.Appx. 997, 1002 (6th Cir. January 4, 2011). Likewise here, the presence of newer records, by itself, does not undermine the ALJ's reliance on the February, 2012 findings.

### C.      The Credibility Determination (Argument 4)

In her last argument, Plaintiff disputes the finding that her claims were not credible. *Plaintiff's Brief* at 15-16. She contends that the ALJ did not consider the totality of evidence in rejecting her allegations of physical limitations due to pain.

The credibility determination, guided by SSR 96–7p, describes a two-step process for

evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment ... that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186, *2 (July 2, 1996). The second prong of SSR 96–7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record." *Id*. at *3. In addition to an analysis of the medical evidence, the ALJ must consider "(i) [] daily activities; (ii) the location, duration, frequency, and intensity of []pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate [] pain or other symptoms; (v) treatment, other than medication . . . received for relief of [] pain or other symptoms; (vi) any measures . . . used to relieve[] pain or other symptoms ... and (vii) other factors concerning [] functional limitations and restrictions due to pain or other symptoms." C.F.R. 404.1529(c)(3).

The ALJ's credibility determination does not contain either procedural or substantive error. The determination begins with a page-long summation of Plaintiff's allegations of limitation (Tr. 27-28). In support of RFC for light work, the ALJ went on to note that despite claims of disabling back pain, "the majority of . . . clinicians' findings were normal," with a full range of motion and normal strength in all extremities (Tr. 28). The ALJ also noted that Plaintiff had experienced migraine headaches long before the alleged onset of disability

and that symptoms were "generally relieved with medication" (Tr. 29).   The ALJ acknowledged some degree of psychological limitation by limiting Plaintiff to work that did "not require frequent significant changes or adaptations or involve meeting production quotas or goals . . . ." (Tr. 29).

The ALJ also noted that Plaintiff's wide range of daily activities undermined the disability claim.  He noted that Plaintiff was able to take of her elderly parents, and pets; got along with family members, friends, and neighbors; and was able to handle her own finances (Tr. 30).  Plaintiff faults the ALJ's observation that she was able to take multiple vacations since the alleged onset of disability.  However, the ALJ acknowledged that taking a vacation, by itself, did not establish non-disability, noting that "a vacation and a disability are not necessarily mutually exclusive" (Tr. 31).  Rather, she found that the ability to take vacations (considered in tandem with the medical records and daily activities) pointed to a non-disability finding (Tr. 30-31).

Plaintiff also criticizes the ALJ for failing to consider that her ability to access treatment was hampered by financial limitations.  She is correct that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p at *7; SSR 82–59, 1982 WL 31384, *4 (1982)(The ALJ must consider an individual's claim he is unable

to afford the prescribed treatment). However, the ALJ permissibly found that despite Plaintiff's allegations of financial hardship, she did not seek "no-cost treatment alternatives" (Tr. 30). The ALJ remarked that during the period under consideration, Plaintiff had "been prescribed" and had "taken appropriate medications," finding that her adherence to the prescribed regime supported rather than undermined the claim (Tr. 30). However, the ALJ reasonably concluded that because the prescribed medications had "been relatively effective in controlling [her] symptoms," a disability finding was not warranted (Tr. 31).

My own review of the medical records supports the ALJ's findings. For example, while Plaintiff alleged weekly migraines (Tr. 50), she told Dr. Mikesell in October, 2012 that she experienced migraine headaches every few weeks (Tr. 262). Likewise, while Plaintiff testified that she did not perform outdoor chores (Tr. 59), September, 2011 records state that she injured her back while performing yard work (Tr. 507). Other records, showing possible malingering and drug seeking behavior also undermine the allegations of disability (Tr. 613, 867). Because the credibility determination is well explained and supported by substantial evidence it should not be disturbed. "[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.' " *Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir.2007) (*citing Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir.1997)).

In closing, I note that the transcript supports the finding that Plaintiff experienced

some degree of limitation and my decision to uphold the ALJ's findings should not be read to trivialize her documented limitations.  Nonetheless, the ALJ's determination that Plaintiff was capable of returning to her former work or a significant range of other work is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court.  *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length

unless by motion and order such page limit is extended by the court.  The response shall

address specifically, and in the same order raised, each issue contained within

the objections.


                                                s/R. Steven Whalen
                                                R. STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE

Dated: December 3, 2015


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record
on December 3, 2015, electronically and/or by U.S. mail.

                                                s/Carolyn M. Ciesla
                                                Case Manager

                                                -